**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

ERIN M. VINCENT,

     Plaintiff,

    v.           16-CV-00527-A
                 **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

     Defendant.
_____

   The Plaintiff seeks review of the Commissioner of Social Security's decision denying her request for Social Security Disability Insurance benefits and Supplemental Security Income benefits under the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

   The parties have filed cross-motions for judgment on the pleadings, and the Plaintiff filed a reply. The Court assumes familiarity with the administrative record, the parties' arguments, and the standard of review. *See, e.g.*, *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998) (summarizing standard of review and test for "disability").

## DISCUSSION

### A. Whether the Commissioner properly relied on Dr. Miller's opinion to assess the Plaintiff's RFC

   In assessing the Plaintiff's residual functional capacity (RFC),[1] the ALJ chose to reject treating Nurse Practitioner (NP) Ostolski's opinion that Plaintiff is "extremely

---

[1] A person's RFC is the "most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

1

limited," Tr. 20, and chose, instead, to give "significant weight," Tr. 22, to the opinion of consultative examiner Donna Miller, D.O. In doing so, the ALJ rejected NP Ostolski's opinion for a number of reasons (discussed more fully below) and observed that Dr. Miller's conclusion was supported by her "impartial status as a consultative examiner," as well as the fact that Dr. Miller "substantiated [the Plaintiff's] assessed restrictions with findings, her medical history and imaging reports on record." Tr. 20. As relevant here, Dr. Miller determined that the Plaintiff "has mild limitation with heavy lifting, bending, carrying, reaching, pushing, and pulling." *Id.* The ALJ relied on this opinion to determine the Plaintiff's RFC, but he "reduced [the Plaintiff's] capacity to sedentary work and accorded her pushing and pulling restrictions as well as postural restrictions when considering Dr. Miller's well supported determination and the imaging results, which is consistent with the evidence of record." *Id.*

The Plaintiff argues that the ALJ erred by rejecting the opinions of both Dr. Miller and NP Ostolski. Specifically, the Plaintiff argues that the ALJ impermissibly "assum[ed] the role of a doctor" by rejecting NP Ostolski's opinion and by "reduc[ing]" Dr. Miller's assessment from a "mild limitation" to sedentary work. In doing so, the Plaintiff claims, "[t]he ALJ made his own RFC finding" after concluding that "Dr. Miller's opinion did not go far enough in restricting [the Plaintiff's] RFC." Docket No. 10-1 at 13.

The Court disagrees in part. There is no basis to conclude that the ALJ ignored Dr. Miller's opinion—to the contrary, the ALJ expressly stated that "Dr. Miller's conclusions were granted significant weight when assessing the [Plaintiff's] restrictions." Tr. 20. Moreover, the ALJ could properly rely on Dr. Miller's assessment

2

even though the ALJ "reduced" Dr. Miller's opinion to sedentary work. This is because Dr. Miller's light work recommendations includes the ALJ's sedentary work conclusion. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

The Court agrees, however, with the Plaintiff's argument that the ALJ improperly interpreted medical evidence to arrive at the RFC. *See, e.g.*, *Gross v. Astrue*, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (quotation marks and brackets omitted). While the ALJ was entitled to rely on Dr. Miller's assessment—and even to conclude that a more restrictive RFC was warranted—the record shows that the ALJ relied on his own interpretation of the medical record to decide that, as the Plaintiff puts it, she was restricted to "a 'less than full,' but not a 'very limited' range of sedentary work." Docket No. 10-1 at 14. In other words, after using Dr. Miller's opinion as a baseline, the ALJ appears to have interpreted the medical evidence to decide how much more restrictive an RFC was appropriate.

Specifically, the ALJ discounted NP Ostolski's opinion because, among other reasons, "the medical evidence of record showed the claimant did not have objective findings of back and neck pathology restricting her to a very limited range of sedentary work indicative of disabling limitations." Tr. 21. And, moreover, the ALJ stated that "an MRI and x-rays showed the [Plaintiff] exhibited herniations of the

3

cervical and lumbar spine that *reasonably restrict* her to less than the full range of sedentary work as set forth" in the ALJ's RFC finding. *Id.* (emphasis added). But the medical records on which the ALJ appears to rely for this statement do not "relate . . . diagnoses to specific residual functional capabilities." *Gross*, 2014 WL 1806779, at *18 (quotation marks omitted). As a result, it is unclear where, in the record, the ALJ found support for the statement that the MRI and x-ray records "reasonably restrict" the Plaintiff to "less than the full range of sedentary work." *See id.* (noting that, if medical records do not "relate . . . diagnoses to specific residual functional capabilities," "the Commissioner may not make the connection [her]self") (quotation marks and brackets omitted). Moreover, it does not appear that Dr. Miller—whose opinion the ALJ relied on in assessing the Plaintiff's RFC—reviewed the Plaintiff's MRI or x-ray records.

The Court therefore remands this case to the Commissioner to re-assess the Plaintiff's RFC. As part of her argument about the ALJ's RFC determination, the Plaintiff argues that the ALJ failed to develop the record. It is for the ALJ to decide on remand whether, in light of the record and this Decision and Order, the record needs further development.

### B. The ALJ properly explained his decision to give no weight to the opinion of NP Ostolski

Next, the Plaintiff argues that the ALJ erred when he gave "no weight" to treating NP Ostolski's opinion that the Plaintiff is "very limited," could not lift ten pounds, was unable to stand for two hours in an eight-hour day, and was unable to sit for more than two hours in an eight-hour day. Tr. 20; *id.* 491-494.

4

The Commissioner's regulations provide that a nurse practitioner is not an "acceptable medical source" whose opinion is entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2) & (f); SSR 06-03p. A nurse practitioner is, however, an "other medical source" "whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).

When an ALJ determines the weight to assign to an "other medical source," such as a nurse practitioner, the ALJ must consider six factors:

> [T]he length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the source presents to support his or her opinion; the consistency of the opinion with the record; the source's area of specialization; and any other factors the claimant brings to the ALJ.

*Drennen v. Astrue*, No. 10-CV-6007MAT, 2012 WL 42496, at *3 (W.D.N.Y. Jan. 9, 2012) (quoting *Carlantone v. Astrue*, No. 08 Civ. 07393(SHS), 2009 WL 2043888, at *5 (S.D.N.Y.2009) (quotation marks and brackets omitted). After considering these factors, the ALJ "is free to conclude that the opinion of a [nurse practitioner] is not entitled to any weight," but if he does so, "the ALJ must explain that decision." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).

Here, ALJ gave a thorough explanation for his decision to give no weight to NP Ostolski's opinion. Specifically, the ALJ observed that NP Ostolski's opinion "is at odds with the [Plaintiff's] ability to be the primary care giver to her two young daughters, one of whom is disabled." Tr. 20-21. Second, the ALJ noted that NP Ostolski's treatment notes—particularly those from 2014, the year in which NP Ostolski gave his opinion—"discuss[] discharging the [Plaintiff] from treatment while recommending no more than conservative care." Tr. 21. And third, the ALJ

5

considered that NP Ostolski is not "an acceptable medical source" whose opinion is entitled "to any special weight." *Id.*

Moreover, the record shows that the ALJ thoroughly considered the Plaintiff's roughly-three-year treatment record with NP Ostolski, noting that the evidence from NP Ostolski's records "does not fully support the [Plaintiff's] allegations," Tr. 19, and observing that, among other things, the Plaintiff "reported no functional limitations from" neck pain; that NP Ostolski described the Plaintiff's back pain "as mild"; that "despite [the Plaintiff's] complaints of painful joints, Mr. Ostolski noted no abnormalities on his clinical examination of the [Plaintiff]"; that, "contrary to her allegations of extreme pain, the [Plaintiff] presented to Mr. Ostolski reporting only some 'discomfort' and 'stiffness' in her mid-back"; and observing repeatedly that NP Ostolski "never recommended [anything] more than conservative treatment for [the Plaintiff's] allegedly disabling pain." Tr. 19-20.

The ALJ's thorough analysis sufficiently explained his decision to attribute no weight to NP Ostolski's opinion. To argue otherwise, the Plaintiff claims that the ALJ's statements regarding her childcare responsibilities and her conservative treatment "are not supported by the record." Docket No. 10-1 at 16. But even if the Plaintiff receives some help with her childcare responsibilities, the record still supports the ALJ's conclusion: the Plaintiff, for instance, testified that it "can sometimes" be difficult to lift her 21-pound daughter, but she did not state that she could not lift her daughter (Tr. 51), and she testified that she has "a disabled daughter that takes up a lot of my time." Tr. 49. Moreover, the fact that, as the Plaintiff notes, "conservative care . . . is not fatal" to NP Ostolski's opinion, Docket No. 10-1 at 17, does not preclude the ALJ

6

from relying on NP Ostolski's consistent recommendation for conservative treatment to discount his opinion that the Plaintiff suffered from disabling pain—indeed, the ALJ is required to consider whether a nurse practitioner's opinion is consistent with the record as a whole. Thus, even if the ALJ did not expressly address each of the factors of SSR 06-03p "in rejecting the nurse practitioner opinion, [he] did explain [his] rejection with enough specificity to make it clear to a reviewer of the record [his] reasons for rejecting the opinion." *Sloan v. Colvin*, 24 F. Supp. 3d 315 (W.D.N.Y. 2014).

With that said, however, the ALJ also noted that he had afforded no weight to NP Ostolski's opinion because "the medical evidence of record showed the [Plaintiff] did not have objective findings of back and neck pathology restricting her to a very limited range of sedentary work indicative of disabling limitations." Tr. 21. For the reasons stated above concerning the Plaintiff's first argument, on remand, the ALJ should clarify whether he would still afford no weight to NP Ostolski's opinion notwithstanding the ALJ's belief that the medical evidence showed the Plaintiff "did not have objective findings of back and neck pathology restricting her to a very limited range of sedentary work indicative of disabling limitations." *Id.*

### C. **Whether the Commissioner erred when she did not find any of the Plaintiff's mental impairments to be "severe"**

Finally, the Plaintiff argues that "the ALJ failed to include bipolar disorder, depression, or anxiety to be severe impairments despite overwhelming medical evidence." Docket No. 10-1 at 19.

Step two of the Commissioner's five-step evaluative process acts largely as a screening mechanism; it provides a way for the Commissioner to "identify[] at an early

7

stage those claimants whose medical impairments are so slight that it is unlikely that they would be found to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

It is for this reason that many courts have concluded—and the Second Circuit has at least suggested—that "error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage." *Howard v. Comm'r*, 203 F. Supp. 3d 282, 297-98 (W.D.N.Y. 2016) (collecting cases). *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) ("Even if we were to reach the merits of [the plaintiff's step-two] argument," which he had waived, "we would not identify error warranting remand because the ALJ did identify severe impairments at step two, so that [the plaintiff's] claim proceeded through the sequential evaluation process.")[2]

Thus, the ALJ's failure to find that the Plaintiff's mental impairments are "severe impairments" is harmless so long as the ALJ considered those non-severe impairments in his RFC assessment. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (noting that it is "legal error" for an ALJ to determine a claimant's RFC "without accounting for any limitations arising from her mental impairment that were established by substantial evidence in the record," even when the ALJ finds that the claimant's "mental impairments [are] nonsevere"); 20 C.F.R. § 404.1545(a)(2)

---

[2] A number of courts have recognized an exception to this harmless error rule in cases where the ALJ failed to apply the so-called "special technique" for mental impairments. *See, e.g.*, *Kennerson v. Astrue*, 2012 WL 3204055, at *15 (W.D.N.Y. Aug. 3, 2012) ("Courts have held that the failure to apply the special technique is not harmless error."); *Howard*, 203 F. Supp. 3d at 297-98 (collecting cases for the proposition that the harmless error doctrine "does not always apply, especially in relation to a mental impairment"). Because the ALJ applied the special technique in this case, this exception to the harmless error rule does not apply.

("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe []' . . . when we assess your [RFC]."); 20 C.F.R. § 416.945(a)(2) (same).

The ALJ did not include any mental limitations in his RFC assessment, but he did consider evidence of mental impairments when formulating his RFC. Tr. 20. Thus, remand is not required on this basis. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("[T]he Step Four residual functional capacity finding did not explicitly include [the plaintiff's] non-exertional functional limitations. However, Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence.") (quotation marks and editorial brackets omitted); *Rogers v. Berryhill*, 2017 WL 3483666, at *4 (W.D.N.Y. Aug. 15, 2017) (remanding where the ALJ's RFC analysis "does not discuss [plaintiff's] depression or explain why the RFC lacked any related mental limitations").

The Plaintiff's final argument is therefore without merit.

## CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings (Docket No. 10) is granted in part, and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is denied. The case is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: October 2, 2018        _s/Richard J. Arcara_____
    Buffalo, New York        HONORABLE RICHARD J. ARCARA
                                            UNITED STATES DISTRICT JUDGE